[Civ. No. 3298.   Second Appellate District, Division One.—April 16, 1921.]

R. J. FINN, Respondent, v. DIAMOND LAUNDRY COMPANY (a Corporation), Appellant.

[1] MECHANIC'S LIEN—FORECLOSURE—COMPLAINT AND NOTICE OF LIEN —FATAL VARIANCE.—Where in an action for the foreclosure of a mechanic's lien the complaint is based on an entirely different contract from that recited in the notice of lien, the variance is fatal.

[2] ID.—RECOVERY FOR EXTRA WORK—PLEADING—CLAIM OF LIEN.— Where in an action for the foreclosure of a mechanic's lien the notice of lien recites an agreement to pay the claimant a stated amount for superintending the installation of plumbing work and the complaint alleges that the identical work in part at least constitutes extra work for which it was agreed the claimant was to be paid ten per cent of the actual cost for his services, there can be no recovery for such extra work.

APPEAL from a judgment of the Superior Court of Los Angeles County.  Charles Wellborn, Judge.  Reversed.

The facts are stated in the opinion of the court.

Ward Chapman and L. M. Chapman for Appellant.

Bicksler, Smith & Parke for Respondent.

SHAW, J.—In an action to foreclose a mechanic's lien plaintiff had judgment, from which defendant has appealed.

The notice of lien filed sets forth two separate and distinct contracts under and in accordance with which plaintiff, as therein stated, performed work and labor in superintending the installation of plumbing fixtures in a building which defendant, as owner, was constructing.

By the complaint each of these contracts is made the subject of a separate cause of action.  In the first count thereof it is alleged that defendant, through its duly authorized agent, made a contract with plaintiff to superintend the installation of all *"rough plumbing and plumbing proper*. in the building of the defendant . . . at all times during its construction and until its completion," which "said plumbing is and shall be known and referred to

herein as the *original contract work"*; that the building is a laundry building and, in addition to the plumbing and pipe-fitting aforesaid (that is, "rough plumbing and plumbing proper"), has installed in it plumbing fixtures, supply and waste-pipes; system of piping to and from laundry machinery for hot and cold water; for treated and untreated water; high and low pressure steam lines; gas, oil, and compressed-air lines; a vacuum-cleaning system, and a sprinkler system, all of which was to be put in, and was actually put in and installed in, said building of defendant and used by it as and for a laundry; that defendant promised, undertook, and agreed to pay plaintiff for said work as superintendent of the installation of said plumbing proper as aforesaid only, being the original contract work in the aforesaid building, the sum of $600, $575 of which it has paid.

The contract, as stated in the notice of lien, and upon which the cause of action is based, is as follows: That defendant, as owner, was engaged in constructing a building for use as a laundry and, acting through one Joseph H. Smailes as its duly authorized agent, employed plaintiff "as superintendent of plumbing, having complete and entire charge of *all plumbing and pipe fitting* in the building at the aforesaid site, at all times during its construction and until its completion; that said work consisted of the installation of plumbing fixtures, supply and waste pipes, very *complicated and special systems of piping to and from laundry machinery for hot and cold water, treated and untreated water, high and low pressure steam lines, gas, oil and compressed air lines, vacuum cleaning system, and sprinkler system, all in said building.* That said contract of employment was entered into on or about August 23rd, 1916, and for which *said work and labor as aforesaid* the said . . . Joseph H. Smailes contracted and agreed to pay the undersigned at the time of the completion of said building the sum of six hundred dollars ($600) for original contract work as *set forth above,* on which said price the sum of five hundred and seventy-five dollars ($575) has been paid."

It thus appears that, after stating that he was to have charge of all the plumbing and pipe-fitting, the nature and character of which is set out with great particularity and

detail, plaintiff avers that for superintending the installation of *all of the work set forth above* (which is all of that specifically described in the notice of lien) he was to be paid $600. But this is not the contract declared upon in the complaint, which alleges the work was done under and pursuant to another and entirely different contract, to wit, one for superintending the installation of all *"rough plumbing and plumbing proper"* in the building. Certainly the plumbing described in the notice of lien could not be deemed rough plumbing. However, conceding such interpretation, such fact could not avail plaintiff herein for the reason that, whatever its character, he, as appears from the notice of lien, was to superintend the installation of all that so particularly described, and for the work and labor in so doing he was to receive as compensation the sum of $600.

[1] Conceding, as found by the court, that the evidence established the existence of the contract set forth in the complaint, and that plaintiff performed the work thereunder, then it follows that the notice of lien filed was untrue; and since no claim of lien upon the contract set forth in the complaint was ever filed, there could be no lien upon which to base the action. In other words, there was a fatal variance between the complaint and the notice of lien upon which the action was founded. (*Reed v. Norton,* 90 Cal. 590, [26 Pac. 767, 27 Pac. 426]; *Wagner v. Hansen,* 103 Cal. 104, [37 Pac. 195].) In discussing the requirements of section 1187 of the Code of Civil Procedure, providing for notice and claim of lien, the court in the last cited case said: "The purpose of the record and statement must be to inform the owner, in case of a contractor and laborers rendering service under such contract, as to the extent and nature of a lienor's claim, to facilitate investigation as to its merits. . . . In all essential particulars it [the statement] must be true." The statement of lien filed by plaintiff was not calculated to inform defendant as to the nature of the claim and contract which he asserted in his complaint. The language used therein imported a contract made between plaintiff and defendant's agent under which the former was to receive $600 for superintending *all of the plumbing* specifically described in the notice of lien. See *Santa Monica etc. Co.* v. *Hege,* 119 Cal. 377, [51 Pac. 555]), to the effect that where the proof

shows the contract set forth in the notice of lien to be untrue, it is fatal to the asserted lien.

[2] In the second count of the complaint it is alleged that defendant promised and agreed to pay plaintiff for the labor of superintending the installation of *extra plumbing work* the sum of ten per cent of the actual cost thereof, which extra work consisted of all plumbing work of every kind or description other than that which plaintiff designates as original contract work, which extra plumbing work is described in the complaint as follows: "All plumbing fixtures; supply and waste pipes; all systems of piping to and from laundry machinery for hot and cold water; treated and untreated water; high and low pressure steam lines; gas, oil, and compressed-air lines; a vacuum-cleaning system; and a sprinkler system, and all laundry piping; . . . and which said extra plumbing work was not set forth in the original plans and specifications, which were incomplete, for the purpose of making use of said building as a laundry; . . . that the total cost of said extra plumbing and laundry piping was and is the sum of $18,828.30"; ten per cent of which, due to plaintiff, is the sum of $1,882.82. The contract upon which this cause of action is based, as stated in the notice of lien, is that defendant "further contracted and agreed to and with the undersigned, R. J. Finn, to pay him . . . the sum of ten per cent of the actual cost of all extra plumbing work of every kind and description, laundry piping, etc., as necessary to complete said building, which said 'extra work' was not set forth in the original plans and specifications, which were incomplete," and that the total cost thereof was $20,493.66.

It is apparent that the work which plaintiff in this count described as extra work is identically the same, in part at least, as that comprised in the work which, as shown by the contract set forth in the notice of lien, he, as we have hereinbefore held, agreed to perform for the $600; and hence, to the extent that it was the same, he could not recover therefor as extra work.

Moreover, if any part thereof was work not called for by the "original plans and specifications, which were incomplete," the burden of showing such fact devolved upon plaintiff. Upon this point no attempt was made to segregate the extras from what plaintiff terms the original con-

tract work. On the contrary, counsel for respondent says that it was, as stated by plaintiff, impossible to do so. Hence the court was left to mere conjecture as to the character, extent, and cost, both as to the work done under the original contract and that constituting extras. Plaintiff's theory, in support of which some meager evidence was introduced, that he was to receive $600 for work to the extent of $5,850 and ten per cent of the cost of all work over that amount, is not only inconsistent with the contracts set forth in the notice of lien, but likewise inconsistent with the allegations of the complaint.

The judgment is reversed.

Conrey, P. J., and James, J., concurred.